# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE ANTONIO PEROZA-BENITEZ** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 17-3980** |
| v. | : | |
| | : | |
| **C.I. DARREN C. SMITH,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                     AUGUST 2, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

In his amended complaint, Plaintiff Jose Antonio Peroza-Benitez ("Plaintiff") asserts that Defendants Reading Police Officers Kevin Haser and Daniel White ("Defendants") employed excessive force on October 8, 2015, while arresting him and, thus, violated his Fourth Amendment rights.[1]  [ECF 32].

Before the Court is Plaintiff's *motion to exclude expert testimony or alternatively to compel expert deposition at expense of defendants* (hereinafter "*Motion to Exclude*").  [ECF 53]. Specifically, Plaintiff moves to preclude Joseph Blaettler from testifying as a use-of-force expert on the basis that the expert report is legally deficient and exceeds the bounds of the Federal Rules of Evidence.  Defendants oppose the motion.  [ECF 54].[2]  For the reasons set forth, Plaintiff's motion is granted and the testimony of Joseph Blaettler, the proposed expert, is excluded.[3]

---

[1]  This action is brought pursuant to 42 U.S.C. § 1983.

[2]  This Court has also considered Plaintiff's reply.  [ECF 56].

[3]  Because the Court is excluding Mr. Blaettler's testimony, there is no need to address Plaintiff's alternative request to compel an expert deposition at the expense of Defendants.

**LEGAL STANDARD**

The Federal Rules of Evidence ("Rules") govern procedures in federal courts. Thus, when a party offers an expert witness, the court functions as a 'gatekeeper' to ensure that the expert's testimony complies with these rules and commanding case law. *In re Paoli R.R. Yard PBC Litig.*, 35 F.3d 717, 732 (3d Cir. 1994) (hereinafter, "*Paoli*"). Relevant here, Rule 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if, "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The United States Court of Appeals for the Third Circuit ("Third Circuit") has interpreted Rule 702 as requiring three criteria: qualification, reliability, and fit. *Paoli*, 35 F.3d at 741-43. "Qualification refers to the requirement that the witness possess specialized expertise." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Reliability requires that the testimony "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993)). Lastly, "fit" refers to the relevancy of the expert's testimony "for the purposes of the case" and its ability to "assist the trier of fact." *Schneider*, 320 F.3d at 404.

There are limitations to the extent of expert testimony, such as, "it is not permissible for a witness to testify as to the governing law." *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991). "Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining

the law to the jury." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (citing *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981)); *see also United States v. Monaghan*, 648 F. Supp. 2d 658, 661 (E.D. Pa. 2009) ("testimony concerning the law itself . . . is inappropriate expert testimony"). Further, an expert may not "state legal conclusions drawn by applying the law to the facts." *Highway Materials, Inc. v. Whitemarsh Twp.*, 2004 WL 2220974, at *20 (E.D. Pa. Oct. 4, 2004). Notably, the Advisory Committee's notes on Rule 704 reaffirm the notion that Rule 702 prohibits "opinions which would merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee's note. However, while an expert witness is precluded from presenting legal conclusions, an expert's "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Ultimately, "the expert's proponent bears the burden of establishing the admissibility of his expert's testimony by a preponderance of the evidence." *Monaghan*, 648 F. Supp. 2d at 660 (citing *Daubert*, 509 U.S. at 592).

**DISCUSSION**

The issue presented is whether the opinions proffered in Mr. Blaettler's expert report are permissible under the governing case law and the Federal Rules of Evidence. Generally, the expert report provides a summary of depositions taken; recounts facts from the record in a narrative manner; describes different purported legal standards and guidelines for the use of force; and offers opinions regarding the use of force employed in arresting Plaintiff.

Plaintiff moves to exclude Mr. Blaettler's proffered testimony because the testimony would: (1) invade the province of the jury by opining on the ultimate legal issue in the case; (2) confuse the issues by introducing various law enforcement policies and procedures that are irrelevant to Plaintiff's legal claims; and (3) impermissibly opine on the credibility of witnesses and sufficiency of the evidence. In response, Defendants contend that Mr. Blaettler's proffered

testimony will not invade the province of the jury because he will opine that "Defendants['] actions were consistent with recognized police policies and procedures and with case law regarding police officers' use of force"; his testimony regarding Reading Police Department's policies and procedures and national standards as to the use of force continuum is probative of [the jury's] inquiry of whether the Defendants['] conduct was reasonable"; and he does not give conclusions or opinions as to the weight of the evidence or credibility of the witnesses. [ECF 54 at 6-8].

Defendants are, however, mistaken. A careful review of the report shows that throughout, Mr. Blaettler repeatedly opines that Defendants' conduct was reasonable and/or did not constitute excessive force, *i.e.*, the ultimate issue before the jury. For example, the expert opines that:

- "[A]ll officers' actions in this matter were reasonable and consistent with Reading Police Department Policies and Procedures, nationally recognized police policies and procedures as well as established case law regarding the use of force by police." (Expert Report at 19).

- "Based on the actions of Jose Peroza-Benitez, Officer Haser's action in striking Jose Peroza-Benitez in the head were justified and reasonable." (*Id.* at 20).

- "Based on the actions of Jose Peroza-Benitez, Officer White's action of tasing Jose Peroza-Benitez were justified." (*Id.*).

- Although officers gave numerous commands to drop his weapon, Jose Peroza-Benitez refused. Based on the actions of Jose Peroza-Benitez, the officer in this matter would have been justified in using deadly force. However, the officers involved showed tremendous restraint by not employing deadly force and continuing to give numerous verbal commands for Jose Peroza-Benitez to comply. A police officer does not have to wait until a suspect points a firearm at him/her in order to use deadly force. (*Id.* at 21).

- "Based on the fact pattern of this case, it is my opinion that Jose Peroza-Benitez posed an imminent danger of death or serious bodily harm to the officer pursuing him. He also posed a danger to the officers and the general public and that danger remained until Jose Peroza-Benitez was tased and handcuffed." (*Id.* at 22).

- "The officers showed tremendous restraint by not using deadly force against Peroza. Yet he alleges that the police used excessive force on him when Haser struck him in the face and White tased him when he was on the ground. The facts and evidence presented demonstrate that the officers showed great restraint and the force they used was consistent

4

- with their training and was justified in bringing a violent and armed suspect under control." (*Id.* at 22).

- "Any reasonable officer would use appropriate force to prevent the suspect from causing death or injury to Officer White and his fellow officers and to bring Peroza under control." (*Id.* at 23).

- "Any reasonable officer faced with the situation Officer's Haser and White were facing would have acted in the same manner and applied the same level of force Haser and White applied." (*Id.* at 23).

- "[I]t is my opinion that Officer Haser's actions, based on the totality of the situation were justified and reasonable and Haser had a reasonable belief that Jose Peroza-Benitez posed an immediate danger to himself and other officers and was thereby authorized to use force to subdue him." (*Id.* at 25-26).

- "Having reviewed the discovery provided to me by counsel for Reading and the individual officers and based on supporting material reference within my report, the actions of all officers involved in this matter were reasonable and appropriate." (*Id.* at 26).

- "All injuries sustained by Jose Peroza-Benitez were a result of his own conduct and not a result of the actions taken by the police." (*Id.* at 29).

- "Therefore, it was the conduct of Peroza which led to the police having to use reasonable force to bring him under control and take him into custody. All injuries sustained by Peroza are a direct cause of his own conduct and actions and not a result of any conduct or any actions taken by any member of the Reading Police Department." (*Id.* at 29).

Clearly, these opinions go to the very issue that will be put to the jury—whether the force employed by Defendants constituted excessive force under the Fourth Amendment. As such, Mr. Blaettler's proposed testimony along these lines must be excluded. *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (affirming the exclusion of an expert's opinions that a defendant officer's actions were unreasonable, and the expert's opinions regarding what a reasonable officer would have done in the circumstances, because, "[i]n a § 1983 suit, 'reasonableness' is practically interchangeable with 'excessiveness,'" and an expert cannot opine about the ultimate legal conclusion); *Damiani v. Momme*, 2012 WL 1657920, at *2 (E.D. Pa. May 11, 2012) (expert in excessive force case could not "offer his opinion that the officers' conduct was unnecessary,

5

punitive, [or] abusive" because such testimony "answers the very question tasked to the jury, and the Court will not permit an expert to invade the province of the jury"); *Burger v. Mays*, 176 F.R.D. 153, 157 (E.D. Pa. 1997) ("Any testimony that the Defendant's use of force was unreasonable under the circumstances or that the Defendant unreasonably seized the Plaintiff would be instructing the jury what result to reach and would be expressing a legal conclusion."); *see also Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir.1992) (testimony in excessive force case that police officer's conduct was "not justified under the circumstances" should have been excluded); *Wells v. Smith*, 778 F. Supp. 7, 8 (D. Md. 1991) (the question of whether the police officer's use of force was reasonable is "quintessentially a matter of applying the common sense and the community sense of the jury to a particular set of facts. . . . It would interfere inappropriately with that judgment process . . . to allow expert testimony as to what reasonableness is[.]").

Mr. Blaettler also offers opinions on legal standards; *to wit*: federal regulations pertaining to the use of deadly force by protective personnel working in the United States Department of Energy and the Pennsylvania statute governing the use of force in law enforcement. (Expert Report at 23-24, 28, 30-31). This proposed testimony, to the extent it is even relevant, is inadmissible and usurps this Court's responsibility. *Patrick*, 536 F. App'x at 258 ("Rule 704 . . . prohibits experts from opining about . . . the law or legal standards."); *Leo*, 941 F.2d at 196 ("[I]t is not permissible for a witness to testify as to the governing law."). It is the Court who will instruct the jury as to the relevant law, as appropriate.

With regard to guidelines for the use of force, Mr. Blaettler cited an untitled 2014 article by an attorney apparently posted to a website maintained by an organization called "PATC Legal & Liability Risk Management Institute"; "The New Jersey Attorney General Guidelines on Use of Force"; a non-sourced, unexplained "Use-of-Force Continuum"; and excerpts from the Reading

6

Police Department Policy on the Use of Force. (Expert Report at 24-27, 30-31). Plaintiff argues that Mr. Blaettler's proposed testimony regarding these guidelines is irrelevant and will confuse the issues at trial. This Court agrees. *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (holding that the district court did not abuse its discretion in excluding evidence of local police department directives on the appropriate use of force on the grounds that "the directives had the potential to lead the jury to equate local policy violations with constitutional violations, and that this risk of confusing issues substantially outweighed the directives' probative value."). Of note, Plaintiff argues that during discovery, he requested from Defendants any policy or guideline documents pertaining to the use of force by Reading police officers, and Defendants objected on the basis of relevance, and provided Plaintiff with some responsive documents, without waiving their relevance objection. Defendants cannot now claim as relevant that which they previously claimed irrelevant. Consequently, Mr. Blaettler cannot testify regarding policies Defendants objected to producing in discovery. Furthermore, although Mr. Blaettler invokes the Reading Police Department Policy on the Use of Force by stating that it "does not prohibit their officers from punching a suspect as long as the strikes are reasonable," the limited provisions he cites do not support that assertion.[4] Under these circumstances, this Court concludes that Mr. Blaettler's expert testimony does not meet the requirements of Rule 702 to "help the trier of fact to understand the evidence" beyond what will be provided by fact witnesses and this Court's legal instructions. Fed. R. Evid. 702.

For the foregoing reasons, Defendant's *Motion to Exclude* is granted.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.

---

[4] The most supportive provision cited provides only: "Force of any kind shall be used only to the extent necessary to effect arrests, subdue violent individuals, and protect the officer and other persons and property." (Expert Report at 26).

7