# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOSE ANTONIO PEROZA-BENITEZ | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff* | : | NO. 17-3980 |
| v. | : | |
| C.I. DARREN C. SMITH, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    JANUARY 24, 2020

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Jose Antonio Peroza-Benitez filed this civil action against Defendants Criminal Investigators Darren C. Smith, Kevin Haser, and Michael Perkins, and Police Officers Daniel White and Nicholas Epolito (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 ("§ 1983") and Pennsylvania common law, alleging that Defendants violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution and committed battery by use of excessive force. [ECF 32]. Before this Court is Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 49], and Plaintiff's response in opposition. [ECF 55]. The issues raised in the motion have been fully briefed and are ripe for disposition. For the reasons set forth herein, the motion is granted and judgment is entered in favor of Defendants.

### BACKGROUND

In their motion for summary judgment, Defendants argue that (1) there is insufficient evidence to support § 1983 excessive force and/or state law battery claims against them, (2) their

conduct was constitutionally permissible, and (3) they are entitled to qualified immunity.

When ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the non-movant (here, Plaintiff). *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:[1]

> Plaintiff's claims arise from what began as the execution of a search warrant and escalated into a chase in pursuit of Plaintiff. Between 6:30 am and 6:40 am on October 8, 2015, Defendants Criminal Investigator ("C.I.") Darren C. Smith, C.I. Kevin Haser, C.I. Michael Perkins, Police Officer Daniel White, and Police Officer Nicholas Epolito, along with other police officers, arrived at Plaintiff's apartment to execute a search warrant based on suspected drug activity. When Plaintiff did not answer the door, the officers broke open the back door of Plaintiff's apartment. Upon hearing the noise of the officers breaking in, Plaintiff fled by climbing out of a third-floor window onto the roof. Defendants Smith and Haser chased after Plaintiff. While in pursuit, Defendant Smith purportedly saw Plaintiff holding a handgun and ordered Plaintiff to drop it.[2] At the moment Defendant Smith claims to have first seen Plaintiff holding a gun, Plaintiff claims he was actually holding a dark undershirt.
>
> During the chase on the roof, Plaintiff heard the officers identify themselves as police and order him to "freeze." However, Plaintiff did not comply with the officers' commands to stop running and instead jumped onto the roof of an adjacent building, which he broke into through an entryway. While on the roof, Plaintiff told Defendant Smith, "I'm not gonna shoot anybody." Defendants Smith and Haser followed Plaintiff into the adjacent building. Once inside, Plaintiff attempted to escape by climbing out of a second-floor window. At this point, Defendant Haser observed that Plaintiff was not presently armed. Defendants Smith and Haser attempted to pull Plaintiff back inside through the window. While hanging out the window, Plaintiff was covered in blood and wearing only boxer shorts. By this time, several other officers, including Defendant White, had gathered outside of the building below the window. At some point, Defendant White yelled to Defendant Haser something "like, if he falls I got him, like I'm here[,]" which he explained to mean "if he falls, I will be here to try to take custody of him and prevent his escape."

---

[1] These facts are derived from Plaintiff's amended complaint, both parties' statements of fact, and both parties' briefs and the exhibits attached thereto. To the extent that any facts are disputed, such disputes will be noted and, if material, will be construed in Plaintiff's favor pursuant to Rule 56.

[2] In this civil action, Plaintiff claims that he never had a gun in his possession during this incident. However, Plaintiff pled guilty to possession of a firearm as a result of this very incident. While Plaintiff certainly cannot now claim that he was unarmed for the entirety of this incident, in the spirit of construing the facts in Plaintiff's favor, this Court will consider Plaintiff to have been unarmed during his relevant interactions with Defendants.

Since Plaintiff was not affirmatively cooperating with officers' attempts to pull him back inside, Defendant Haser punched Plaintiff "a couple of times" in the head, with the purported intention of stunning him to gain compliance and be able to pull him inside. Defendants claim that the punches failed to stun Plaintiff. When Defendants Smith and Haser remained unsuccessful in pulling Plaintiff back inside, they ceased trying to do so and let go of Plaintiff. After they let go, Plaintiff hung on to the window for a couple of seconds and then fell from the window onto a concrete stairwell. Plaintiff claims that he was so stunned and disoriented from the punches that he fell from the building. The parties later learned that Plaintiff broke his leg in the fall.

Immediately upon Plaintiff hitting the ground, Defendant White tased Plaintiff once for five seconds. Having heard the earlier radio communication from his fellow officers that Plaintiff was armed and fleeing, Defendant White stated that he believed Plaintiff to be armed at the time he fell from the window. After Plaintiff's fall, Plaintiff claims to have been knocked temporarily unconscious and that he did not make any further attempt to escape, sit up, or stand. In contrast, several Defendants claim that Plaintiff lunged forward after falling. "Once the taser cycle completed," Plaintiff was handcuffed and taken into custody.

**LEGAL STANDARD OF REVIEW**

Federal Rule of Civil Procedure ("Rule") 56 governs the practice of summary judgment motions. Rule 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its existence or non-existence might affect the outcome of the case, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena*, 638 F.3d at 196.

The movant bears the initial burden of identifying evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). Once the movant has met its initial burden, the nonmovant must rebut the motion by identifying "some

evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). In doing so, the nonmovant must rely on facts in the record and "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument[,]" *id.*, or on "bare assertions, conclusory allegations[,] or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" then the court should grant summary judgment for the movant. *Celotex*, 477 U.S. at 322.

**DISCUSSION**

As noted, Defendants argue that there is insufficient evidence to support § 1983 excessive force or state law battery claims against them, that their conduct was constitutionally permissible, and that they are entitled to qualified immunity. Defendants further argue that Defendants Smith, Perkins, and Epolito were not personally involved in the alleged wrongdoing and, thus, all claims against them should be dismissed. In recognition of their lack of involvement, Plaintiff consents to the dismissal of his claims against those three defendants.[3] Plaintiff also consents to the dismissal of his claims stemming from the allegations that he was kicked in the back during his arrest.[4] Since the issue of qualified immunity is dispositive for the remaining two defendants, this Court will only address that argument.

Section 1983 provides an avenue for private citizens to seek civil remedies when they have been deprived of their rights by a state official in violation of federal law. 42 U.S.C. § 1983. To

---

[3] *See* ECF 55 at 6.

[4] *Id.*

establish a § 1983 claim, a plaintiff must show "a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). However, satisfaction of these elements does not guarantee recovery. Government officials, including police officers, are shielded from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "An officer is entitled to qualified immunity if he meets at least one of a two prong inquiry[,]" *Patrick v. Moorman*, 536 F. App'x 255, 259-60 (3d Cir. 2013) (citing *Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010) and *Saucier v. Katz*, 533 U.S. 194, 201 (2001)): (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer violated a constitutional right; and (2) whether that right was "clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (internal quotations and modifications omitted) (quoting *Saucier*, 533 U.S. at 201–

5

02). In other words, if an officer shows that either (1) there was no constitutional violation or (2) a plaintiff's alleged right was not clearly established at the time of the incident, then the officer is entitled to qualified immunity. The officer seeking qualified immunity has the burden of establishing his or her entitlement to the affirmative defense. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (citing *Reedy*, 615 F.3d at 223). Courts can exercise their discretion in deciding which prong to address first, since officers need only satisfy one. *Pearson*, 555 U.S. at 236; *Patrick*, 536 F. App'x at 259-60 (citing *Reedy*, 615 F.3d at 223-24). When multiple defendants seek qualified immunity based on the same incident, a district court must separately analyze each defendant's conduct. *Reynolds v. Municipality of Norristown*, 716 F. App'x 80, 82 (3d Cir. 2017) (citing *Grant v. City of Pittsburgh*, 98 F.3d 116, 123 (3d Cir. 1996)). This Court will begin by addressing the second prong for each remaining defendant.

As previously stated, the second prong of the qualified immunity analysis requires a court to determine whether a plaintiff's purported constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Lamont*, 637 F.3d at 182 (quoting *Saucier*, 533 U.S. at 201–02). "A clearly established right is one that is 'sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right.'" *Estep v. Mackey*, 639 F. App'x 870, 873 (3d Cir. 2016) (quoting *Mullenix*, 136 S. Ct. at 308) (emphasis added). In conducting this inquiry, a court first "must define the right allegedly violated at the appropriate level of specificity[,]" and, second, must determine if the identified right was clearly established at the time of the defendant's conduct. *Estep*, 639 F. App'x at 873 (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)). In defining the right at issue, a court's description should be "particularized . . . in light of the case's specific context, not as a broad general proposition." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015). The degree of specificity

is important because "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established. Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742 and *Saucier*, 533 U.S. at 205) (emphasis in original) (internal quotations omitted).

In determining whether the alleged right was clearly established at the relevant time, there does not need to be "a case on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*." *al-Kidd*, 563 U.S. at 741 (emphasis added). In other words, to hold that a right was clearly established, a court does not need to find that the very conduct at issue was previously held unlawful, rather, it must "conclude that the firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right." *Spady*, 800 F.3d at 639 (citations omitted).

### *Defendant Haser*

With regard to Plaintiff's interaction with Defendant Haser, Plaintiff's alleged right is the Fourth Amendment right to be free from excessive force in the form of multiple punches to the head while hanging out of a window through which he had attempted to flee and while known to be unarmed. In assessing Defendant Haser's conduct, this Court finds that Defendant Haser's actions did not violate a clearly established constitutional right, because "a reasonable officer in [his] shoes at the time in question would not have perceived federal law to preclude" his conduct. *Brown v. Cwynar*, 484 F. App'x 676, 681 (3d Cir. 2012).

7

Arresting officers have "the right to use some degree of physical coercion or threat thereof to effect [an arrest]." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Further, "there is no clearly established law suggesting that the conduct of an officer who strikes a non-compliant arrestee who is resisting arrest is unlawful. To the contrary, the [United States Court of Appeals for the] Third Circuit has recently held that there are no cases directly on point establishing that such conduct is unlawful." *Franklin v. McGowen*, No. 17-CV-1593, 2019 U.S. Dist. LEXIS 153149, at *19 (M.D. Pa. Sept. 6, 2019) (referencing *Santini v. Fuentes*, 739 F. App'x 718, 721 (3d Cir. 2018)).

In this case, Plaintiff fled his apartment, engaging several officers, including Defendant Haser, in a foot pursuit across rooftops. Plaintiff heard the officers identify themselves yet continued to run, broke into an abandoned building, and attempted to escape out of a window. Defendant Haser and another officer attempted to pull Plaintiff back in through the window to take him into custody, but they struggled to do so. At that point in time, Defendant Haser observed that Plaintiff was not armed. Defendant Haser then punched Plaintiff "a couple of times" in the head, with the purported intention of stunning Plaintiff to gain compliance and pull him inside. Though the parties disagree about the immediate effectiveness of the punches in stunning Plaintiff, that fact is irrelevant to determining whether the punches themselves constitute "clearly established" unlawful conduct. Plaintiff had been fleeing and ignoring police commands during the foot pursuit, and once he climbed out of the window, he did not affirmatively cooperate with officers' attempts to pull him inside. Under these circumstances, Defendant Haser's use of manual force on Plaintiff, even while Plaintiff was unarmed, cannot be considered a violation of any clearly established precedent.

Furthermore, Plaintiff failed to cite any sufficiently similar case to the contrary, and the cases Plaintiff does cite are entirely distinguishable from this case. *See Lamont*, 637 F.3d at 184

(officers allegedly used deadly force shooting at suspect after he turned away, no longer posing a threat; suspect died as a result); *Martin v. City of Reading*, 118 F. Supp. 3d 751, 759-64 (E.D. Pa. 2015) (officers allegedly tased suspect while he stood near edge of an overpass and consequently fell forty feet, sustaining severe injuries); *Gulley v. Elizabeth City Police Dep't*, 340 F. App'x 108, 110 (3d Cir. 2009) (three officers allegedly beat suspect's face and head while he was laying on the ground and not resisting arrest). Lastly, "it should go without saying that this is not an 'obvious case' where [a constitutional violation is so clear that] 'a body of relevant case law' is not needed [to put reasonable officers on notice that their conduct was unlawful]." *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Based on the foregoing analysis, this Court need not address the first prong of the qualified immunity analysis. "[Even if [Defendant Haser's] use of force was unreasonable under the circumstances, he is entitled to qualified immunity"[5] because not "every reasonable official"[6] in his position would have understood "beyond debate"[7] that punching Plaintiff under these circumstances would constitute excessive force.[8]

### *Defendant White*

As to Plaintiff's interaction with Defendant White, Plaintiff's alleged right is the Fourth Amendment right to be free from excessive use of force in the form of the use of a taser while not visibly armed (but after the acting officer was informed moments earlier by a fellow officer that

---

[5]     *White v. City of Lancaster*, No. 16-4225, 2018 WL 1210588, at *6 (E.D. Pa. March 6, 2018).

[6]     *Mullenix*, 136 S. Ct. at 308.

[7]     *al-Kidd*, 563 U.S. at 741.

[8]     *See Cwynar*, 484 F. App'x at 681 ("Even assuming prong one is satisfied and Brown's Fourth Amendment rights were violated, qualified immunity would attach because not every reasonable official in Officer Cuscino's shoes would have understood beyond debate that tasering Brown constituted excessive force." (citing *al-Kidd*, 563 U.S. at 741) (internal quotations omitted)).

Plaintiff was armed and in active flight), while laying on the ground after having fallen from a window through which he had attempted to flee and been rendered temporarily unconscious, and after having made no further attempt to flee after hitting the ground. In assessing Defendant White's conduct under the totality of the circumstances, this Court finds that Defendant White's actions did not violate a clearly established constitutional right, as "a reasonable officer in [his] shoes at the time in question would not have perceived federal law to preclude" his conduct. *Cwynar*, 484 F. App'x at 681.

As noted, arresting officers have "the right to use some degree of physical coercion or threat thereof to effect [an arrest]." *Graham*, 490 U.S. at 396. "The Supreme Court has not decided whether or under what circumstances the use of a Taser on a resisting or noncompliant person may be unreasonable. And the Third Circuit has not done so in a precedential opinion. But multiple courts of appeals, including the Third Circuit in a nonprecedential decision, had approved of the use of Tasers to subdue resisting or noncompliant individuals." *Randolph-Ali v. Minium*, No. 16-CV-1625, 2019 WL 1299195, at *7 (M.D. Pa. March 21, 2019) (citing a collection of Third Circuit cases, as well as three decisions from other circuits) (internal citations omitted); *see also Estep*, 639 F. App'x at 874 n.4 (Third Circuit explicitly noting that it "has not yet spoken in a precedential opinion about taser use" and again declining to do so).

While some courts within the Third Circuit have found an officer's taser use prohibited under clearly established law, such cases are inapplicable because they involved facts where

> the plaintiff's physical condition or surroundings are such that it would have been apparent to a reasonable officer that the use of a taser could cause serious injury or even death. Where there is an absence of evidence to suggest that the arrestee or suspect was subjected to a risk of serious injury or death, however, courts have found that qualified immunity is available to officers who use tasers in appropriate circumstances such as those involving fleeing suspects who are resisting arrest.

10

*Pino v. Carey*, No. 15-CV-1172, 2016 WL 8849028, at *4 (M.D. Pa. Dec. 16, 2016), *approved and adopted*, 2017 WL 1541792 (M.D. Pa. April 28, 2017). The *Pino* court cited two exceptional, non-controlling district court cases where taser use was found prohibited under clearly established case law: *Martin*, 118 F. Supp. 3d 751 (officers allegedly tased suspect while he stood near edge of an overpass and consequently fell forty feet, sustaining severe injuries) and *Brown v. Burghart*, No. 10-3374, 2012 WL 1900603 (E.D. Pa. May 25, 2012) (officer tased plaintiff while he was near flammable material, causing plaintiff to catch fire). Notably, Plaintiff relies on both of these cases in his response. Plaintiff's reliance, however, is misplaced. This Court agrees with the reasoning in *Pino* that "lower court decisions such as *Martin* and *Brown* must be read in context and contrasted against numerous other decisions where courts have concluded that police use of a taser to overcome a suspect's resistance may be reasonable." *Pino*, 2016 WL 8849028, at *5. *See*, *e.g.*, *Patrick*, 536 F. App'x at 256-57 (affirming finding of qualified immunity where unarmed bank robbery suspect fled scene, refused to obey officer commands to stop, and officer tased suspect, who subsequently fell to the ground and suffered severe injuries); *Cwynar*, 484 F. App'x at 677-79 (affirming finding of qualified immunity where officer, after observing man struggle with another officer, tased a 73-year-old, unarmed man for the third time while man was laying on the ground on top of his hands and refusing to release his hands); *Farrington v. Silva*, No. 16-1206, 2018 WL 6819010, at *1-2 (D. Del. Dec. 28, 2018) (finding qualified immunity where officer tased a handcuffed, unarmed defendant multiple times while he was laying on the ground, after defendant had attempted to flee); *White v. City of Lancaster*, 2018 WL 1210588, at *5 (finding qualified immunity where officer first tased suspect while sitting in his car and failing to comply with instructions and tased suspect again after two other officers extracted suspect from car, placed him on the ground, and were attempting to handcuff him); *Estep v. Mackey*, No. 11-207, 2016 WL

1273249, at *7-9 (M.D. Pa. March 31, 2016) (finding, on remand, qualified immunity where officer tased suspect who broke away from officer's grasp, began to run away, and as a result of the tase fell on the ground and struck his head on the curb).

In the present case, Plaintiff had fled, engaged several officers in a rooftop foot chase, and repeatedly ignored commands to stop. During the foot chase, Defendant Smith purportedly saw Plaintiff holding a handgun and communicated that observation to his fellow officers, including Defendant White. After being ordered to drop the gun, Plaintiff said, "I'm not gonna shoot anybody." At no point did any officer communicate to the other officers involved that Plaintiff no longer appeared armed. When Plaintiff's continued flight led to his attempted escape out of a window, two officers were unable to pull him back inside. Defendant White stood on the sidewalk beneath Plaintiff, who was hanging out the window in only his boxer shorts. Defendant White yelled to Defendant Haser something "like, if he falls I got him, like I'm here[,]" which he explained to mean "if he falls, I will be here to try to take custody of him and prevent his escape." Immediately upon Plaintiff hitting the ground, Defendant White tased Plaintiff once, for five seconds, and then handcuffed him. Defendant White stated he believed Plaintiff to be armed at the time he fell, and knew Plaintiff was in flight from his fellow officers. While it is in dispute whether Plaintiff made any physical movements after falling, such as attempting to stand or sit up, for the purposes of this motion, the Court assumes Plaintiff made no further movements and was knocked temporarily unconscious.

Under these circumstances, this Court finds that Defendant White's use of non-lethal force in the form of a single tase to Plaintiff, regardless of whether or not Plaintiff was armed and whether or not he was unconscious in the moments after falling and being tased, cannot be considered a violation of any clearly established precedent. At the time he was tased, Plaintiff had

been actively fleeing from several officers, refusing to comply with commands, and resisting capture—behavior that, under existing precedent, falls squarely within the range of accepted circumstances that warrant taser use. Further, the undisputed facts in these circumstances "do not suggest that Officer [White] was on notice that his use of a taser carried with it a serious risk of serious injury or death. This case does not, therefore, align with those cases that have held that the use of a taser was prohibited by clearly established law. [Plaintiff] was not in a physical position that should have alerted Officer [White] to the fact that his use of the taser may result in serious injury or death[.]" *Estep v. Mackey*, 2016 WL 1273249, at *6. Plaintiff was not in a precarious situation where a tase would put him at risk of any abnormally heightened risk of serious injury or death—he was simply laying on the ground, not perched on a ledge or surrounded by flammable material.

Further, taser use has frequently been held permissible even where suspects were handcuffed and unarmed.[9] The simple facts that Plaintiff was laying on the ground and that no gun was found on his person when he was finally taken into custody do not render Defendant White's conduct clearly unconstitutional. Plaintiff argues that because he was only in his boxer shorts at the time he fell, Defendant White should have assumed Plaintiff was not presently armed. Plaintiff's argument is unpersuasive. Defendant White had been notified by fellow officers that Plaintiff was armed with a handgun[10] and had engaged in extraordinary measures in his attempt to flee (running across rooftops, breaking into another building, jumping out of a window, etc.). Defendant White had no reason, nor was he required, to second-guess the information he received

---

[9] *See* cases listed and described *supra* p. 11.

[10] Plaintiff's arguments fail to acknowledge that the alleged facts that (A) Plaintiff was not armed when Defendant White tased him and that (B) Defendant White believed Plaintiff to be armed at the time he tased Plaintiff are not contradictory or mutually exclusive. This Court assumes both to be true for the purposes of this motion.

13

from his fellow officers. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("No settled Fourth Amendment principle requires [an] officer to second-guess the earlier steps already taken by his or her fellow officers . . . ."). While Defendant White may have been able to see, from his view on the ground, that Plaintiff was not carrying a gun attached to his lower legs or back, he certainly could not see all of Plaintiff's person or any objects that may have been in Plaintiff's waistband, and he did not have the opportunity to search Plaintiff for weapons himself. Defendant White operated on the information received from his fellow officers and it was reasonable for him to believe that, once Plaintiff hit the ground, he was armed and would continue his attempt to escape. Defendant White made a quick decision, deploying his taser *immediately*, essentially *simultaneously* with Plaintiff hitting the ground. Therefore, Plaintiff's degree of consciousness after hitting the ground is irrelevant.

In support of Plaintiff's contention that Defendant White's conduct violated clearly established law, Plaintiff cites cases that are easily distinguishable from the present facts. *See Lamont*, 637 F.3d at 184 (officers allegedly used deadly force shooting at suspect after he turned away, no longer posing a threat; suspect died as a result); *Anthony v. Seltzer*, 696 F. App'x 79, 82 (3d Cir. 2017) (holding force cannot be used "against an individual who is compliant and poses no ongoing threat to himself or others . . . .") (here, Plaintiff fell while attempting to escape from police; the fact that he was laying on the ground for a mere moment does not render him "compliant," nor does it suggest that he posed any less of a threat than he did moments prior); *Martin*, 118 F. Supp. 3d at 759-64 (see parenthetical with previous citation to *Martin*); *Gulley*, 340 F. App'x at 110 (three officers allegedly beat suspect's face and head while he was laying on the ground and not resisting arrest). As with Defendant Haser's conduct, "it should go without saying that this is not an 'obvious case' where [a constitutional violation is so clear that] 'a body of

relevant case law' is not needed [to put reasonable officers on notice that their conduct was unlawful]." *Wesby*, 138 S. Ct. at 591 (citing *Brosseau*, 543 U.S. at 199).

Based on the foregoing analysis, this Court need not address the first prong of the qualified immunity analysis. "Even if [Defendant White's] use of force was unreasonable under the circumstances, he is entitled to qualified immunity"[11] because not "every reasonable official"[12] in his position would have understood "beyond debate"[13] that tasing Plaintiff under these specific circumstances would constitute excessive force.[14] Consequently, Defendants Haser and White are entitled to qualified immunity.

### *State Law Battery Claims*

Defendants also argue that there is insufficient evidence to support any state law battery claims against them. The Court need not address this argument, nor the state law battery claims against the remaining defendants.[15] Having disposed of all federal claims over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state law battery claims, in accordance with 28 U.S.C § 1367(c).[16]

---

[11]  *City of Lancaster*, 2018 WL 1210588, at *6.

[12]  *Mullenix*, 136 S. Ct. at 308.

[13]  *al-Kidd*, 563 U.S. at 741.

[14]  *See Cwynar*, 484 F. App'x at 681 ("Even assuming prong one is satisfied and Brown's Fourth Amendment rights were violated, qualified immunity would attach because not every reasonable official in Officer Cuscino's shoes would have understood beyond debate that tasering Brown constituted excessive force.") (citing *al-Kidd*, 563 U.S. at 741) (internal quotations omitted).

[15]  As noted, Plaintiff consents to the dismissal of all claims against Defendants Smith, Perkins, and Epolito, as well as any claim stemming from the allegations that Plaintiff was kicked in the back during his arrest. As such, those claims are dismissed with prejudice. [ECF 55 at 6].

[16]  Section 1367(c) gives district courts the discretion to decline to exercise supplemental jurisdiction over state law claims after the court has dismissed all of the federal claims over which it had original jurisdiction. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). Further, a district court "'<u>must</u> decline' to exercise supplemental jurisdiction in such circumstances 'unless considerations of judicial economy,

**CONCLUSION**

For the reasons stated herein, this Court finds that Defendants Haser and White are entitled to qualified immunity, Defendants' motion for summary judgment is granted, and Plaintiff's claims against Defendants are dismissed. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Stone v. Martin*, 720 F. App'x 132, 135 (3d Cir. 2017) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)) (emphasis in original).